1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   FRANK VALENZUELA, JR.,

11          Plaintiff,                    No. CIV S-04-0900 FCD DAD P

12      vs.

13   C. SMITH, M.D., et al.,              ORDER AND

14          Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief pursuant to 42 U.S.C. § 1983.  The matter is before the court on plaintiff's discovery

18   motions, defendants' motion for summary judgment, and plaintiff's motion for an order

19   concerning legal mail.  All motions have been fully briefed.

20                            BACKGROUND

21          Plaintiff is confined at Mule Creek State Prison ("Mule Creek").  This action is

22   proceeding on his initial complaint, filed on May 6, 2004.  Plaintiff's claims against defendants

23   Reyes, Knowles, Hollis, and Liftin were dismissed on June 7, 2004, for failure to state a claim

24   upon which relief may be granted.  The remaining defendants are C. Smith, B. Williams, and J.

25   Sainz, all of whom are medical doctors.

26   /////

1    In his complaint, plaintiff alleges as follows:  when he arrived at Mule Creek from

2  Calipatria State Prison in 2000, he complained of pain and swelling in his right hand caused by a

3  fracture that had been treated with surgical pins; it was not the first time or the last time that

4  plaintiff complained of pain in his right thumb and hand; in 2001 defendant Smith did not refer

5  plaintiff to an orthopedic surgeon to determine whether the bone needed to be re-set but instead

6  ordered x-rays and told the radiologist what to say in his report; defendants Williams and Sainz,

7  who were defendant Smith's supervisors, granted plaintiff's appeal at the second level and led

8  appeals staff to believe plaintiff would be seen by an orthopedic surgeon, but as of April 25,

9  2004, the date of plaintiff's complaint, plaintiff had not received an orthopedic consultation,

10  remained in constant pain, and had only limited use of his hand.

11    Plaintiff seeks injunctive relief in the form of an orthopedic consultation and any

12  necessary surgery or therapeutic treatment prescribed by an orthopedic expert.  Plaintiff also

13  seeks compensatory and punitive damages.

14    Defendants Sainz, Smith, and Williams filed their answer to the complaint on

15  August 19, 2004, and the court issued a discovery order on August 24, 2004.  A scheduling order

16  was filed on December 27, 2004.  Pursuant to a thirty-day extension of time granted by the court

17  on June 17, 2005, defendants filed a timely motion for summary judgment motion on July 18,

18  2005.  Plaintiff was granted an extension of time to oppose the motion and filed his opposition

19  on September 6, 2005.  Defendants filed a reply on September 15, 2005, at which time the

20  motion was fully briefed and submitted for decision.  Plaintiff did not seek leave to submit

21  further briefing but on October 11, 2005, filed a reply to defendants' reply and a separate

22  statement of undisputed material facts.  Less than a week later, plaintiff filed his motion

23  concerning legal mail.  The briefing of plaintiff's motion was complete on November 22, 2005.

24  Due to the extensions of time granted to both parties and plaintiff's filing of supplemental

25  briefing and motions, the court found it necessary to vacate the pretrial conference set for

26  November 25, 2005, and jury trial set for February 28, 2006.

1    PLAINTIFF'S DISCOVERY MOTIONS

2    I.  Motion to Determine Sufficiency of Answers and Objections to Admissions

3    On March 17, 2005, plaintiff served defendants with a request for admissions.

4    Plaintiff challenges defendant Smith's answers to Nos. 2, 5, 8, 9, 10, 11, 12, and 13; defendant

5    Williams' answers to Nos. 2, 4, 5, 6, and 7; and defendant Sainz's answers to Nos. 3, 5, 6, 8, 10,

6    11, and 13.  Plaintiff contends that the answers to these requests are insufficient, evasive,

7    fabricated, defective, and/or not sufficiently specific.  Plaintiff seeks an order compelling

8    amended answers.

9    The court has reviewed plaintiff's motion, including the attached copies of

10   plaintiff's requests and defendants' responses, and has carefully considered both defendants'

11   opposition and plaintiff's reply.  Plaintiff merely disagrees with defendants' answers and desires

12   different answers.  The court sustains defendants' objections and finds that defendants' responses

13   are sufficient.  Plaintiff's motion to compel amended responses to his requests for admissions

14   will be denied.

15   II.  Motion for Order Compelling Discovery

16   Plaintiff asserts that he served two document production requests, the first on

17   August 27, 2004, and the second on December 29, 2004, and that defendants failed to produce all

18   of the documents requested.  Plaintiff seeks costs on the ground that defendants' refusal to

19   produce the requested documents was not substantially justified.  Plaintiff's motion does not

20   identify the specific document requests at issue.

21   Attached to plaintiff's motion are the following documents:  a certificate of his

22   good faith; a copy of defendants' response to plaintiff's Request for Production of Documents,

23   Set Two; and a copy of plaintiff's April 7, 2005 letter to defendants' counsel, in which plaintiff

24   complains of defendants' responses to Requests No. 1 through 11 and 14 of plaintiff's Set Two.

25   The court deems these responses to be the responses at issue in plaintiff's motion to compel

26   production of documents.

1    Upon careful consideration of all attachments to plaintiff's motion, defendants'

2    opposition to plaintiff's motion to compel, and plaintiff's reply, the court finds that defendants'

3    responses to all specified requests in Set Two are satisfactory.  Defendants cannot be compelled

4    to produce documents they do not have and will not be compelled to produce documents that are

5    equally available to plaintiff in his prison medical file or in the prison law library.  The court

6    finds that Request No. 8 is overbroad and burdensome, and plaintiff has not demonstrated that

7    the requested documents are likely to lead to the discovery of admissible evidence.[1]  Defendants'

8    objections to No. 8 are sustained.  Plaintiff's motion to compel production of additional

9    documents in response to Set Two will be denied.

10    In reply to defendants' opposition, plaintiff asserts deficiencies in defendants'

11    responses to his Request for Production of Documents, Set One.  Plaintiff may not amend or

12    expand the scope of his motion to compel by raising new issues in reply to opposition.  The new

13    issues will not be entertained by the court.

14    PLAINTIFF'S MOTION FOR ORDER CONCERNING MAIL ROOM POLICIES

15    Plaintiff seeks an order prohibiting mail room staff from limiting the number of

16    large manila envelopes he mails each week at state expense.  Plaintiff's motion arises from an

17    incident that occurred on October 6, 2005, when he submitted two large manila envelopes for

18    mailing, one addressed to the court and the other to defendants' counsel, and mail room staff told

19    him he could not mail more than one large manila envelope at state expense per week.  The

20    envelopes contained documents pertaining to defendants' motion for summary judgment in this

21    action, specifically plaintiff's reply to defendants' reply and plaintiff's separate statement of

22

23    [1] By Request No. 8, plaintiff seeks "any/all complaints filed or alleged against
defendants, on going complaints, investigations (prisoners civil rights violations, deliberate
indifference to medical needs of prisoners, complaints with the Civil Rights Division of the

24    Department of justice, Citizens Complaints per P.C. §§ 830, 832.5, cdc inmate/Parolee Appeals
Form 602 (602) while employed by cdc. (Board of Medical Quality Assurance -v- Theradini

25    (1979) 93 Cal App.3d 609) in order to show a pattern of deliberate indifference to medical needs
of prisoners, which is relevant to the claims or defenses of the parties; FRCP § 26 (B-1)."  (Pl.'s

26    Mot. for Order Compelling Discovery, filed Apr. 19, 2005, Attach. 1 at 4.)

1   undisputed material facts.  The envelope addressed to the court was mailed, and plaintiff's

2   documents were received by the court on October 11, 2005.  The envelope addressed to

3   defendants' counsel was mailed five days later.  Plaintiff contends that mail room staff hindered

4   his access to this court by preventing him from serving his documents on defendants as required

5   by the Federal Rules of Civil Procedure and the Local Rules of Practice.  Plaintiff also argues

6   that he is litigating cases in several state and federal courts and must be able to mail an unlimited

7   number of large envelopes every week.

8          In opposition to plaintiff's motion, defendants assert that the refusal to mail both

9   of plaintiff's envelopes on October 7, 2005, was a result of confusion among mail room staff

10  about departmental policy relating to indigent mail.  Defendants offer a declaration from Ronda

11  Holtorf, Office Services Supervisor of the Mule Creek State Prison Mail Room.  Declarant

12  indicates that plaintiff may request and receive only one large manila envelope and five smaller

13  manila envelopes every week but that there is no limit on how many envelopes he may mail each

14  week.  Declarant states that, due to staff error, plaintiff's envelope addressed to counsel was

15  mailed five days later than the envelope addressed to the court.  Defendants contend that the

16  problem has been resolved and that plaintiff's request for an order should be denied as moot.

17         In reply, plaintiff complains of the way his inmate appeal concerning the October

18  6, 2005 incident was handled, accuses declarant Holtorf of lying, and denies that the matter has

19  been resolved.  Plaintiff does not deny defendants' contentions that staff made an error with

20  regard to the envelopes submitted for mailing on October 6, 2005, and that he may mail an

21  unlimited number of large envelopes each week.  Instead, plaintiff complains about the policy of

22  issuing only one large manila envelope per week.  He asserts that he will receive a rule violation

23  report if he possesses more than one large manila envelope at a time, although it is clear that

24  plaintiff possessed more than one large manila envelope on October 6, 2005, and that the second

25  envelope was not rejected by mail room staff on the ground that he is not permitted to possess

26  two large manila envelopes at one time.  Plaintiff writes at length about the difficulties of

1  litigating numerous cases in state and federal court due to the limitations on possession of large

2  envelopes.

3          The court finds that the issue presented in plaintiff's motion, i.e., the right to mail

4  an unlimited number of large envelopes, has been resolved and plaintiff is no longer in need of

5  the order sought.  Plaintiff has not suffered any denial of access to this court, since his

6  unauthorized reply to reply and accompanying document were received and filed.  Under the

7  mailbox rule, a prisoner's documents are deemed filed and served upon delivery to prison

8  officials for mailing.  Any prejudice resulting from prison officials' delay in mailing plaintiff's

9  second envelope would have been suffered by defendants' counsel, whose time to respond, if a

10 response had been required, would have been reduced by five days.  No response was required.

11 The court will not address the new issues improperly raised in plaintiff's reply, as this action is

12 not a proper forum for litigation of issues unrelated to plaintiff's medical claims and the

13 documents he is required to file in this case.  Plaintiff's motion for a court order regarding his

14 legal mail will be denied.

15                    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

16 I.  Standards for Summary Judgment Pursuant to Rule 56

17         Summary judgment is appropriate when it is demonstrated that there exists "no

18 genuine issue as to any material fact and that the moving party is entitled to a judgment as a

19 matter of law."  Fed. R. Civ. P. 56(c).  The moving party

20         always bears the initial responsibility of informing the district court
            of the basis for its motion, and identifying those portions of "the
21         pleadings, depositions, answers to interrogatories, and admissions
            on file, together with the affidavits, if any," which it believes
22         demonstrate the absence of a genuine issue of material fact.

23 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

24         "[W]here the nonmoving party will bear the burden of proof at trial on a

25 dispositive issue, a summary judgment motion may properly be made in reliance solely on the

26 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Summary

1 judgment should be entered, after adequate time for discovery and upon motion, against a party

2 who fails to make a showing sufficient to establish the existence of an element essential to that

3 party's case and on which that party will bear the burden of proof at trial. See id. at 322. "[A]

4 complete failure of proof concerning an essential element of the nonmoving party's case

5 necessarily renders all other facts immaterial." Id. Summary judgment should be granted "so

6 long as whatever is before the district court demonstrates that the standard for entry of summary

7 judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

8          If the moving party meets its initial responsibility, the burden shifts to the

9 opposing party to establish that a genuine issue as to any material fact does exist. See Matsushita

10 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the

11 existence of this factual dispute, the opposing party may not rely upon the allegations or denials

12 of its pleadings but is required to tender evidence of specific facts in the form of affidavits and/or

13 admissible discovery material in support of the contention that a dispute exists. See Fed. R. Civ.

14 P. 56(e); Matsushita, 475 U.S. at 586 n.11. The party opposing summary judgment must show

15 that any fact in contention is material, i.e., a fact that might affect the outcome of the suit under

16 the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

17 could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S.

18 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

19 (9th Cir. 1987); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

20          In trying to establish the existence of a factual dispute, the party opposing

21 summary judgment need not establish a material issue of fact conclusively in his or her favor. It

22 is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

23 parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the

24 "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see

25 whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P.

26 56(e) advisory committee's note on 1963 amendments).

1    The evidence of the party opposing summary judgment is to be believed, and all

2    reasonable inferences that may be drawn from the facts placed before the court must be drawn in

3    favor of the party opposing summary judgment.  See Anderson, 477 U.S. at 255; Matsushita, 475

4    U.S. at 587.  Inferences will not be drawn out of the air, however; it is the opposing party's

5    obligation to produce a factual predicate from which an inference may be drawn.  See Richards v.

6    Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

7    (9th Cir. 1987).  The opposing party "must do more than simply show that there is some

8    metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not

9    lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

10   Matsushita, 475 U.S. at 587 (citation omitted).

11   On June 21, 2004, the court advised plaintiff of the requirements for opposing a

12   motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

13   Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th

14   Cir. 1988).

15   II.  Legal Standards Applicable to Plaintiff's Claims

16   The Civil Rights Act under which plaintiff is proceeding provides that

17   [e]very person who, under color of [state law] . . . subjects, or
     causes to be subjected, any citizen of the United States . . . to the
18   deprivation of any rights, privileges, or immunities secured by the
     Constitution . . . shall be liable to the party injured in an action at
19   law, suit in equity, or other proper proceeding for redress.

20   42 U.S.C. § 1983.  The statute requires an actual connection or link between the actions of each

21   defendant and the deprivation alleged to have been suffered by the plaintiff.  See Monell v.

22   Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

23   "A person 'subjects' another to the deprivation of a constitutional right, within the

24   meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

25   omits to perform an act which he is legally required to do that causes the deprivation of which

26   complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Supervisory

8

1   personnel are generally not liable under § 1983 for the actions of their employees under a theory

2   of respondeat superior and therefore, when a named defendant holds a supervisorial position, the

3   causal link between the defendant and the claimed constitutional violation must be specifically

4   alleged and proved.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld,

5   589 F.2d 438, 441 (9th Cir. 1978).

6            The unnecessary and wanton infliction of pain constitutes cruel and unusual

7   punishment forbidden by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986);

8   Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

9   In order to prevail on claims alleging cruel and unusual punishment, a prisoner must allege and

10  prove that objectively he or she suffered a sufficiently serious deprivation and that subjectively

11  prison officials acted with deliberate indifference in allowing or causing the deprivation to occur.

12  Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

13           Where a prisoner's Eighth Amendment claims arise in the context of medical

14  care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

15  deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. at 106.  Such a

16  claim has two elements:  "the seriousness of the prisoner's medical need and the nature of the

17  defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991).  A

18  medical need is serious "if the failure to treat the prisoner's condition could result in further

19  significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin, 974 F.2d at

20  1059 (quoting Estelle v. Gamble, 429 U.S. at 104).  Indications of a serious medical need include

21  "the presence of a medical condition that significantly affects an individual's daily activities."

22  Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the

23  objective requirement for proving an Eighth Amendment violation.   Farmer v. Brennan, 511

24  U.S. 825, 834 (1994).

25           If a prisoner establishes the existence of a serious medical need, he or she must

26  then show that the defendants responded to the serious medical need with deliberate indifference.

1  Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials

2  deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in

3  which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94

4  (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard

5  to medical care, however, "the indifference to his medical needs must be substantial.  Mere

6  'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

7  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

8  105-06).  Deliberate indifference is "a state of mind more blameworthy than negligence" and

9  "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  Farmer,

10  511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

11            Delays in providing medical care may manifest deliberate indifference.  Estelle,

12  429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay, a plaintiff

13  must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994)

14  (per curiam); McGuckin v. Smith, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335

15  (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd.

16  of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

17            Mere differences of opinion between a prisoner and prison medical staff as to

18  proper medical care do not give rise to a § 1983 claim.  See Jackson v. McIntosh, 90 F.3d 330,

19  332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662

20  F.2d 1337, 1334 (9th Cir. 1981).

21  III.  The Parties' Arguments and Evidence

22        A.  Defendants' Motion

23            Defendants move for summary judgment on the basis that they were not

24  deliberately indifferent to plaintiff's medical needs and were not negligent in providing medical

25  care to plaintiff.  Defendant Smith asserts that he provided plaintiff with constitutionally

26  adequate medical care at all times.  Defendant Williams asserts that his personal involvement

1  with the treatment of plaintiff's left thumb was minimal and that his minimal involvement did

2  not demonstrate deliberate indifference.  Defendant Sainz asserts that his involvement with

3  plaintiff's care was also minimal, that his minimal involvement did not demonstrate deliberate

4  indifference, and that liability cannot be based on a theory of respondeat superior.

5           Defendants' motion is supported by defendants' declarations and plaintiff's

6  medical records.  Defendants' evidence establishes the following preliminary facts:  on February

7  18, 2000, while incarcerated in Calipatria State Prison, a fracture of plaintiff's right thumb was

8  surgically repaired at Alvarado Hospital Medical Center in San Diego; metallic pins were

9  inserted into the fracture site; on June 1, 2000, plaintiff was transferred to Mule Creek State

10 Prison; upon arrival at Mule Creek, plaintiff received a medical screening; the nurse who

11 conducted the screening noted that plaintiff was currently under a doctor's care for hepatitis C

12 and for his right thumb; the screening form contains no record of complaints of pain or swelling.

13           Defendants' evidence establishes the following facts related to defendant Smith's

14 treatment of plaintiff:  Dr. Smith has been a licensed physician and surgeon since 1979, has been

15 employed by the CDC since 1990, has been Chief Physician and Surgeon at Mule Creek since

16 2003, is Board certified in the field of Internal Medicine, and is familiar with the standards of

17 care in General Medicine; on June 13, 2000, twelve days after plaintiff arrived at Mule Creek,

18 Dr. Smith saw plaintiff in the administrative segregation unit for complaints relating to hepatitis

19 C and for follow-up on his right thumb fracture; during the examination on June 13, 2000,

20 plaintiff inquired first about hepatitis C, and Dr. Smith told plaintiff his most recent liver

21 function tests were normal and no treatment was indicated but that plaintiff should have his liver

22 functions tested and checked in six months; plaintiff then reported having a right thumb fracture

23 and complained to Dr. Smith about some aching at the base of the thumb; Dr. Smith noted that

24 no swelling was present, ordered an x-ray of the right thumb to evaluate the healing process,

25 prescribed Motrin 400mg to be used three times a day as needed, and ordered routine liver

26 function tests in six months; on August 8, 2000, Dr. Smith saw plaintiff for a follow-up regarding

his right thumb; plaintiff told Dr. Smith that the pins had been removed about five weeks after

the injury, before plaintiff was transferred to Mule Creek; plaintiff complained of some achy

discomfort at the joint; Dr. Smith's examination of plaintiff's right thumb noted a good range of

motion; the x-rays taken of the first metacarpal fracture site on July 10, 2000, noted a slight

dorsal angulation, which is a cosmetic angulation of the bone near the site of a healing fracture; a

slight dorsal angulation does not affect functional use, does not indicate a badly set bone, and

does not indicate that surgery is appropriate; the surgical solution to an angulation, when

medically indicated, is to re-break and re-set the bone; in plaintiff's case, a surgical solution was

not medically indicated; after the examination on August 8, 2000, Dr. Smith's assessment was a

healing fracture of the right thumb, and his plan was to re-check x-rays in the future; a radiology

report on August 11, 2000, reported excellent position of healing fracture in the right thumb; the

callus formation seen at the healing break site in the August 11, 2000 x-ray is normal for a bone

fracture and shows that the fracture is healing; a callus is formed by calcium in the bone covering

and uniting the break site and is a positive sign of healing; a radiology report on July 26, 2001,

showed a normal right thumb with no evidence of acute abnormalities; a radiology report on

November 16, 2001, showed normal bony structures and no appreciable abnormalities in

plaintiff's right hand; Dr. Smith has seen plaintiff on numerous occasions as a patient regarding

various complaints; on the basis of his examination of plaintiff's right thumb and his review of

plaintiff's medical records and x-rays, Dr. Smith concludes that the thumb has been normal since

July 26, 2001, and that there is no need for further medical intervention other than continued

monitoring; Dr. Smith did not communicate any improper instructions to the radiologist and had

no desire that the radiologist do anything other than read and interpret the x-rays ordered; the

short notes written by Dr. Smith were simply to order the x-rays and tell the radiologist what to

look for, and were not an attempt to influence the radiologist's report or obtain a particular result;

if any of the x-rays had shown anything other than progress and proper healing, Dr. Smith would

have recommended that plaintiff see a specialist; the Physician's Order by Dr. Smith on June 13,

1    2000, states "x-ray rt thumb evaluate healing Fx 2/2000," which merely asks for an x-ray of the

2    right thumb to evaluate the healing of a February 2000 fracture; the Physician's Order by Dr.

3    Smith on August 8, 2000, states "x-ray rt thumb compare to 7-10-00 evaluate for healing Fx Feb.

4    2000," which is an order for an x-ray and a request that the radiologist compare the new x-ray

5    with the film taken July 10, 2000; the purpose of the August 8, 2000 order was to compare the

6    two x-rays to determine the change and progress that occurred between the dates of the two x-

7    rays, which is a commonly accepted practice and is necessary to evaluate the healing process for

8    a broken bone; Dr. Smith does not know why plaintiff was not seen by an orthopedic surgeon

9    after his inmate appeal was granted.

10              Defendants' evidence establishes the following facts related to defendant

11   Williams' and defendant Sainz's involvement with plaintiff's medical care at Mule Creek:  Dr.

12   Williams was the Chief Physician and Surgeon at Mule Creek during the times at issue in

13   plaintiff's complaint; Dr. Williams' duties included assisting in the supervision of medical staff,

14   coordinating ancillary services, and arranging for consultations with outside medical experts; Dr.

15   Williams was not directly involved with plaintiff's medical care and treatment plan; on October

16   9, 2001, in response to plaintiff's inmate appeal, Dr. Williams conducted an administrative

17   review of plaintiff's medical file, interviewed plaintiff regarding his complaints of right thumb

18   pain, and approved a recommendation that plaintiff see an orthopedic surgeon; Dr. Williams had

19   no further involvement in the treatment or evaluation of plaintiff's right thumb fracture; Dr.

20   Sainz, now retired, was the Health Care Manager at Mule Creek during the relevant times; Dr.

21   Sainz also approved plaintiff's request to see an orthopedic specialist, although a referral to an

22   orthopedist was not medically necessary, and recommended that the request be approved by the

23   Medical Authorization Review Committee; neither Dr. Williams nor Dr. Sainz did anything to

24   prevent or preclude plaintiff from obtaining any medical care or evaluation; Dr. Sainz does not

25   know why plaintiff was not referred to the orthopedist after the appeal; neither Dr. Williams nor

26   Dr. Sainz ever said that plaintiff's fracture was not properly set, and neither of them ever stated

13

1   that it was clear plaintiff's hand was swollen; Dr. Williams did not tell plaintiff he had a right to

2   see an orthopedic surgeon or a consultant; Dr. Williams did not insist that plaintiff be seen by a

3   specialist; plaintiff's complaints regarding his thumb were not of an immediate, urgent, or

4   emergency nature; plaintiff never required any treatment that was not rendered in a timely

5   fashion; plaintiff's fracture healed properly and there was no need for orthopedic referral;

6   defendants' actions regarding plaintiff were at all times within the community standard of care

7   and consistent with the degree of knowledge and skill ordinarily possessed and exercised by

8   members of their profession under similar circumstances; defendants did not refuse or deny

9   plaintiff appropriate medical treatment or evaluation.

10          Defendants argue that plaintiff's claims are based on unsupported allegations,

11   mere speculation about defendants' thinking, and mischaracterization of medical records.

12   Defendants assert that the medical records contradict plaintiff's allegations that he advised Mule

13   Creek personnel of pain in his thumb immediately upon his arrival at Mule Creek, that he

14   regularly complained of pain, that the July 10, 2000 x-ray shows a badly set bone, that formation

15   of a callus at a break site means something is wrong, and that the August 11, 2000 and July 26,

16   2001 x-rays, showing a healing fracture and a normal thumb, respectively, are fraudulent.

17   Defendants contend that they are entitled to summary judgment because plaintiff received

18   adequate medical care for his thumb and there is no objective evidence that plaintiff requires any

19   further treatment for his right thumb.  Defendants argue that, if defendants were negligent for not

20   following up on plaintiff's inmate appeal, that negligence does not rise to the level of deliberate

21   indifference because no defendant had a culpable state of mind.

22          The undersigned finds that defendants have carried their initial burden of pointing

23   to evidence that demonstrates there is no genuine issue as to any material fact and that they are

24   entitled to judgment as a matter of law on plaintiff's Eighth Amendment claims.  Because

25   defendants have borne their initial responsibility, the burden shifts to plaintiff to establish the

26   existence of a genuine dispute of material fact that precludes summary judgment.

14

1        B.  Plaintiff's Opposition

2            Plaintiff requests oral argument.  He argues that the pleadings and discovery on

3    file "show there is a genuine issue as to the material facts."  (Pl.'s Opp'n at 1.)  Plaintiff argues

4    that the evidence upon which his Eighth Amendment claims are based is sufficient to meet his

5    burden of proof and that defendants are not entitled to summary judgment.  Plaintiff relies on his

6    memorandum of points and authorities, his declaration, and all pleadings and papers on file.

7            A party opposing a motion for summary judgment is required to reproduce the

8    facts contained in the moving party's statement of undisputed facts and to admit each fact that is

9    undisputed and deny each fact that is disputed, including with each denial a citation to

10   evidentiary documents relied upon in support of the denial.  Local Rule 56-260(b).  A party

11   opposing summary judgment may file a concise statement of disputed facts, citing the source

12   thereof in the record, that contains additional material facts as to which there is a genuine issue

13   precluding summary judgment.  Id.  Plaintiff did not reproduce the facts contained in defendants'

14   statement of undisputed facts and admit or deny each fact.  Nor did plaintiff submit a concise

15   statement of disputed facts, as permitted by the rule.

16           In his two-page declaration, plaintiff contends that defendants' declarations

17   contain falsehoods and are in bad faith. Plaintiff does not identify the alleged falsehoods but asks

18   the court to summon the defendants "to answer to these falsehoods."  He argues that the facts

19   alleged in his complaint and other documents "raise a genuine issue to be tried by a jury."

20   Attached to plaintiff's declaration are copies of selected medical records (Documents 1 through 6

21   & 8); one page from Dorland's Pocket Medical Dictionary, with the definition of "angulation"

22   highlighted (included in Document 6); plaintiff's inmate appeals and responses (Document 7);

23   the job specifications for chief medical officer of a correctional facility (Document 9); and the

24   job specifications for physician and surgeon of a medical facility (Document 10).

25           In his memorandum of points and authorities, plaintiff argues that the defendants

26   evaluated his injured right thumb, took numerous x-rays, determined that consultation with an

15

1   orthopedic surgeon depended on the results of further x-rays, evaluated further x-rays, agreed that

2   plaintiff required further consultation by an orthopedic surgeon, and granted consultation with a

3   specialist on October 9, 2001.  Plaintiff reiterates the allegations of his complaint that he began

4   complaining about pain and swelling in his thumb when he arrived at Mule Creek, complained

5   constantly thereafter, was denied any care for his injured thumb, and did not receive the

6   consultation that was granted on October 9, 2001.  Plaintiff argues that defendants "knew there

7   was dorsal angulation at the fracture site, which translate -- a 'badly set bone.'"  (Pl.'s Mem. of

8   P. & A. at 2.)  Plaintiff cites Dorland's Medical Dictionary, in which one definition of the word

9   angulation is "deviation from a straight line, as in a badly set bone."  (Pl.'s Decl. in Opp'n to

10  Mot. for Summ. J., Doc. 6.)

11          Plaintiff offers no competent evidence that the "slight dorsal angulation" observed

12  by the radiologist in his report dated July 10, 2000, demonstrated that plaintiff's bone was badly

13  set.  Nor has plaintiff offered evidence that controverts the x-ray reports noting "excellent

14  position of healing fracture, right thumb" on August 11, 2000, "normal right thumb" on July 26,

15  2001, and normal bony structures with no significant abnormalities on November 16, 2001.

16          C.  Defendants' Reply and Plaintiff's Reply to Reply

17          Defendants assert that plaintiff's opposition contains no testimony and presents no

18  evidence other than the records attached to plaintiff's declaration.  Defendants contend that the

19  opposition is based almost entirely on speculation, conjecture, and lay opinion.  Defendants

20  object to plaintiff's characterization of dorsal angulation as improper lay opinion, to plaintiff's

21  citation to the medical dictionary as hearsay, and to plaintiff's characterization of Dr. Smith's

22  intent when he requested a comparison of x-rays as improper, speculative, and without

23  foundation.  Defendants argue that plaintiff has not established that defendants knew of a

24  substantial risk of serious harm to plaintiff and deliberately disregarded any such risk.

25          Local Rule 78-230(m) does not require or authorize the filing of a reply to a reply,

26  and plaintiff did not seek leave to file a reply to defendants' reply.  In his unauthorized filing,

1   plaintiff asserts that the "[r]ecords and evidence show that there is a genuine issue of material,

2   triable facts."  Plaintiff offers no evidence that he is qualified to interpret medical records but

3   reiterates his argument that "dorsal angulation" means "badly set bone."  Although plaintiff

4   asserts that he will subpoena expert witnesses who will testify at trial that "dorsal angulation"

5   means "badly set bone," he has produced no declaration by an expert witness.

6           Plaintiff's unauthorized reply was accompanied by a statement of undisputed

7   facts.  Such a statement is neither required nor permitted by Local Rule 56-260.  The assertions

8   presented in this document are not supported by the documents cited.

9   IV.  Discussion

10          "A scintilla of evidence or evidence that is merely colorable or not significantly

11  probative does not present a genuine issue of material fact" precluding summary judgment.

12  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  See also Summers v. A.

13  Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).  On summary judgment the court is

14  not to weigh the evidence or determine the truth of the matters asserted but must only determine

15  whether there is a genuine issue of material fact that must be resolved by trial.  See Summers,

16  127 F.3d at 1152.  Nonetheless, in order for any factual dispute to be genuine, there must be

17  enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's

18  summary judgment motion.  See Addisu, 198 F.3d at 1134.

19          Here, the undersigned finds that the condition of plaintiff's fractured and

20  surgically repaired right thumb during the healing process constituted a serious medical need.

21  Although plaintiff claims he received no care or treatment for his right thumb at Mule Creek,

22  defendants' evidence demonstrates that plaintiff's thumb was examined and treated regularly.

23  Plaintiff complained of pain arising from several ailments, and pain medication was prescribed.

24  Radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a

25  normal thumb."  Subsequent reports, ordered in response to plaintiff's complaints of re-injury

26  and pain or in response to his inmate appeal, continued to reflect a healed fracture.

1    Upon consideration of plaintiff's opposition to defendants' motion, the

2  undersigned finds that plaintiff has not offered or pointed to evidence that demonstrates the

3  existence of disputed issues of material fact with regard to the treatment provided for his repaired

4  thumb.  Defendants have offered evidence that their examination and treatment of plaintiff met

5  the standard of care, while plaintiff has merely misinterpreted medical records, drawn

6  unreasonable inferences from medical records, and speculated as to defendants' motives.

7  Plaintiff's arguments demonstrate only a difference of opinion between a prisoner and prison

8  medical staff as to his proper medical care.

9    No evidence offered by plaintiff supports a conclusion that defendants acted with

10  the substantial indifference required to support an Eighth Amendment claim of constitutionally

11  inadequate medical care.  Such indifference is an element essential to plaintiff's constitutional

12  claims, and plaintiff's complete failure of proof concerning this element requires that summary

13  judgment be entered for all defendants.  Plaintiff's request for oral argument will be denied.

14    Accordingly, IT IS ORDERED that:

15    1.  Plaintiff's April 13, 2005 motion to determine the sufficiency of defendants'

16  responses to plaintiff's requests for admissions (docketed as #27) is denied;

17    2.  Plaintiff's April 19, 2005 motion to compel discovery (docketed as #28) is

18  denied;

19    3.  Plaintiff's September 6, 2005 request for hearing/oral argument (included in

20  plaintiff's opposition docketed as #45) is denied;

21    4.  Plaintiff's October 17, 2005 motion for court order regarding envelopes

22  (docketed as #51) is denied; and

23    IT IS RECOMMENDED that:

24    1.  Defendants' July 18, 2005 motion for summary judgment (docketed as #40) be

25  granted; and

26    2.  This action be dismissed.

1     These findings and recommendations are submitted to the United States District

2   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3   days after being served with these findings and recommendations, any party may file written

4   objections with the court and serve a copy on all parties.  A document containing objections

5   should be titled "Objections to Magistrate Judge's Findings and Recommendations."  Any reply

6   to objections shall be served and filed within ten days after service of the objections.  The parties

7   are advised that failure to file objections within the specified time may, under certain

8   circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951

9   F.2d 1153 (9th Cir. 1991).

10   DATED: February 15, 2006.

11

12   _____

      DALE A. DROZD
13    UNITED STATES MAGISTRATE JUDGE

14   DAD:13
     vale0900.57
15

16

17

18

19

20

21

22

23

24

25

26